HARVARD LAW SCHOOL

JACOB GOODHEART *v* THE PRESIDENT AND DIRECTORS OF
THE RARITAN MINING AND MANUFACTURING CO. and
JAMES S. GWYNNE.

*If upon bill and answer the Court is not satisfied of the insolvency of a corporation, an
injunction allowed on the bill, under the "Act to prevent frauds by incorporated
companies," will be dissolved.*

On the 23d March, 1849, Jacob Goodheart exhibited his bill,
for himself and such other creditors of " The President and Di-
rectors of the Raritan Mining and Manufacturing Company" as
should come in &c., stating the incorporation of the said Com-
pany, by act of February 25th, 1846; that he is unapprised
whether any election for Directors or President was ever held;
that the affairs of the Corporation have been managed principally
by James S. Gwynne, of the city of New York, acting as Secre-
tary or Secretary and Treasurer of the Company, and one Ste-
phens, said to reside at Wheeling; that at the instance and request
of Gwynne, the complainant, on the 25th Nov. 1848, entered into
an agreement with Gwynne by which he, the complainant, agreed
to build a furnace and chimney at the Raritan mine, (describing
the work to be done,) the complainant to furnish the materials,
and haul the iron work from New Brunswick; the iron work to
be furnished by Gwynne; and Gwynne agreed to pay for the
work to be done and materials to be furnished by the complain-
ant, $725, as follows: $250 when the brick are on the ground
at the mine; $100 when the walls of the furnace shall be ready
to receive the boilers, and the chimney is finished; and $375
when the work is completed. That the complainant proceeded
with the work till in Dec., 1849, when he was compelled to stop
by reason of Gwynne's neglect to furnish the boilers, &c.

The bill states that, since the 1st of Jan., 1849, the ordinary
business of the Corporation has been suspended, and for want of
funds to carry on the same; that many debts, amounting in the
aggregate to a large sum, are in arrears and unpaid; and that
several judgments have been obtained against said Company be-

fore P. P. Runyon, a Justice of the Peace, and executions issued thereon, and levied on the personal property yet remaining on the premises attached to the mining establishment. That tools and implements indispensable to the prosecution of such mining business have been, from time to time, during and since the month of Feb., 1849, carted from said premises and taken to the city of New York, by order of said Gwynne, or his clerk or agent, one John Jones, doing business in Wall st., New York; and that but for said executions still further removals of such property and articles were to have been made within a few days last past. That the laborers having been employed by Gwynne were unable to obtain the payment of their wages as the same became due, and after waiting some days, were finally induced, as the complainant is informed and believes, to accept of part in lieu of their just dues, and several weeks since withdrew from the premises; and that for some weeks last past the said mining premises have been in charge of a single individual, and for the period aforesaid all mining and manufacturing business has been totally suspended on said mining premises.

The bill states that there is due to the complainant $335 for the work so done by him under the said agreement, at the request of Gwynne, for the said Corporation. That Gwynne objected to the account of the complainant, and insisted on a deduction of $100; and that the complainant, apprehensive of the loss of part if not the whole of his account, agreed to make such deduction if the balance should be paid within a few days; which Gwynne undertook and promised to do, and induced the complainant again and again to attend in New York at times by him appointed; but, under various pretences, Gwynne failed and refused to make any payment.

The bill prays an injunction restraining the Corporation from receiving any debts due to it, and from paying or transferring any debts or effects of the Corporation; and from exercising any of the franchises or privileges granted by the said act of incorporation; and for a receiver.

An injunction was granted, and a receiver appointed.

Separate answers were put in by the Company and James S. Gwynne.

The answer of the Company states, that an election of five directors was made by the stockholders attending for that purpose in person or by proxy; and that such directors, as soon as might be after the election, proceeded to elect one of their number to be their President; and that the Corporation have ever since been and now are duly organized under their charter; and that ever since, the stock, property and affairs of the Corporation have been managed by a Board of five Directors; and they deny that the affairs of the Corporation have been managed principally by James S. Gwynne, of the city of New York, acting as Secretary or Secretary and Treasurer of said Corporation, and one Stephens, said to reside at Wheeling.

They say that they do not know of their own knowledge, but only upon information and belief, that at the instance and request of Gwynne, on the 25th November, 1848, the complainant entered into an agreement in the words and to the purport in the bill mentioned; and that they deny the same, but they insist that it appears by the said agreement and the bill, that they are not bound by the said agreement.

They say they do not know, but are informed and believe, that the complainant advanced with the things to be done by him until he was compelled to stop, in Dec., 1848; but whether he was compelled to stop at that time by reason of Gwynne's neglect to furnish the boilers, &c., they are without knowledge, information or belief, and therefore deny the same.

They deny that since the 1st January, 1849, the ordinary business of the Corporation has been suspended, and for want of funds to carry on the same, and that many debts, in the aggregate amounting to a large sum, have been unpaid, and are now or were at the time of the filing of the bill, in arrears and unpaid.

They admit that two small judgments, amounting in the whole to $140, have been, erroneously as they believe and allege, recovered against the Company, before P. P. Runyon, and executions issued thereon and levied on the personal property (suffi-

cient to pay the same,) remaining on the premises attached to the said mining establishment, but that the property so levied on has not been advertised or sold; and that these are the only judgments against said Corporation, either in this State or elsewhere.

They deny that tools and implements indispensable, &c., have been from time to time, since and during February, 1849, carted from the premises and taken to the city of New York by the order of Gwynne or his clerk and agent, one James Jones, doing busines in Wall street, New York; or that but for the executions aforesaid, still further removals of such property and articles were to have been made within a few days last past, or within a few days before the filing of the bill.

They deny that the laborers, having been employed by Gwynne, were unable to obtain the payment of their wages as the same became due; or that after waiting some days they were finally induced to accept of part in lieu of their just dues; or that by reason thereof they, several weeks before the filing of the bill, withdrew from said premises; but, on the contrary, they say that the laborers who have heretofore worked for the Corporation have always received in full their true amount of wages; and that said laborers are now ready and anxious and willing to work in said mine again whenever the business of the Corporation shall be resumed.

They admit that for some weeks next before the filing of the bill, the premises have been in charge of a single person; and that for the said period all mining and manufacturing business has been totally suspended on said mining premises; but they say that such suspension has not occurred by reason of the want of funds, but from prudential motives of expediency; and that there is not now, nor has there ever been, any suspension from any other cause; and that it is the intention of these defendants to resume such business in a short time.

They say that the said Corporation is perfectly solvent, and abundantly able to pay all their debts, and have a large amount of funds remaining.

They deny that any such amount as is alleged in the bill is due to the complainant, either from the defendants or from

Gwynne ; and deny that they have suspended payment of all or any of their just debts.

The answer of Gwynne is generally the same.   He further asserts, that he objected to the amount of complainant's bill, and insisted on a reduction of $100, and that the complainant agreed to the reduction ; but he denies that the complainant so agreed from feeling apprehensive of the loss of the whole or any part of his account, or that said deduction was only to be made in case the balance should be paid in a few days ; or that he induced the complainant again and again to attend in New York at times appointed by this defendant ; or that under various pretences he failed or refused to make any such payment.

He admits that he undertook and promised to pay the said balance in a few days, but was prevented from doing so by the absence from the city of New York of an individual whom he wished to confer with on the subject ; and he says it was not on account of a lack of funds, but from a discretionary and pruden tial motive alone.

He denies that any such balance as is stated in the bill was due the complainants, either from him or from the said Company.

On these answers a motion was made to dissolve the injunction.

*Robinson,* (of the city of New York,) in support of the motion.

*Leupp* contra.

THE CHANCELLOR.   On the bill and answer, the insolvency of the Company does not satisfactorily appear.   The injunction will be dissolved.

Order accordingly.

See 1 *Green's Ch.* 173 ; 3 *Ib.* 187.